[2 NYS3d 112]

In the Matter of KEITH A. HAWTHORNE (Admitted as KEITH ANDREW HAWTHORNE), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 26, 2015

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Norma I. Lopez* of counsel) for petitioner.

*Keith A. Hawthorne*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on June 20, 1994 under the name Keith Andrew Hawthorne. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

In January 2012, the Departmental Disciplinary Committee received the first of four complaints from persons for whom respondent had obtained settlements but failed to disburse some or all of the amounts due to the clients. In the first such matter, respondent received a check for $120,000 in April 2011 for which he was to retain a one-third contingency fee for representing the client, Timothy Wilks, in a personal injury action. Respondent disbursed $50,000 but retained $30,000 pending resolution of liens in connection with medial services and a settlement advance. The client alleged that respondent had not taken sufficient steps to resolve the liens.

Respondent answered the complaint in March 2012, explaining that the lienholders refused to reduce the amount of the liens despite his concerted efforts. He further averred that Wilks had declined his offer to deposit the $30,000 into court while he attempted to achieve a resolution.

In February 2012, the Committee received a similar complaint from Nelson and Sandra Espinal, a couple for whom respondent negotiated a settlement of $10,500 each for personal injury claims arising out of an automobile accident. It was alleged that respondent failed to pay them their respective shares of $6,673.64 each. Respondent submitted an April 2012 answer stating that the insurance carrier's request for a new W-9 form had delayed payment, which was received in January 2012. However, the settlement checks were dated November 29, 2011, and the clients did not receive payment until March 2012. Respondent alleged that he had advised them to pick up the checks from his office before he left for a vacation but that they were unable to do so prior to his departure.

In the summer of 2012, respondent submitted, at the Committee's request, escrow account statements required to be maintained pursuant to Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b). Examination of a May 2011 bank statement revealed that check No. 1170 was listed twice in the

varying amounts of $10,000 and $2,500, prompting the request for a copy of the instrument. By way of explanation in a November 2012 letter, respondent alleged that a bank employee had told him that the May 2011 statement contained an error, that the correct amount was $10,000 and that a copy of the check respondent had requested would be mailed to him "within a couple of weeks."

In response to a subpoena duces tecum served on HSBC Bank, the Committee obtained respondent's escrow account statements for January 2011 through May 2012 containing numerous discrepancies from statements obtained from respondent. The April 2011 bank statement produced by respondent showed an ending balance of $133,518.02, whereas HSBC's statement indicated an ending balance of $110,018.02. And while the only activity reflected on respondent's submitted statement was a single deposit of $120,000 (representing the Wilks settlement), the HSBC statement listed, in addition, 10 withdrawals in amounts ranging from $1,000 to $10,000, all but one of which were online transfers to respondent's checking account.* Finally, while respondent should have maintained a balance of at least $30,000 in connection with the outstanding liens, the HSBC statement indicated that the balance repeatedly fell below this amount to as little as $3,018.02 as of April 26, 2011.

The May 2011 statements revealed similar discrepancies—an ending balance of $60,018.02 on respondent's statement compared with only $18,518.02 on the HSBC statement, again short of the $30,000 required to be maintained to cover outstanding liens in the Wilks matter. Similarly, the HSBC statement reflected more withdrawals than the statement submitted by respondent. In particular, the November 2011 statement produced by respondent showed no account activity whatsoever and a balance of $41,652.40, whereas the November 2011 statement produced by HSBC showed a beginning balance of $152.40, a *negative* balance of -$4,847.60 as of November 17, 2011, and an ending balance of only $52.40. Statements for the December 2011 through March 2012 period revealed similar irregularities, reflecting vastly different beginning and ending balances and account activity. Respondent's statements indicated a balance that continuously exceeded $40,000, while HSBC's statements showed a balance as low as 17¢ as of Janu-

---

* It is not clear from the statements whether the checking account was a personal or business account.

ary 31, 2012. Notably, under either set of statements, the balance was insufficient to meet the amount of $43,347.28 that respondent was required to maintain on behalf of Mr. Wilks ($30,000) and the Espinals ($13,347.28 combined).

At an appearance before the Committee for an examination under oath on February 6, 2013, respondent confirmed both the accuracy of the monthly balances reflected by the statements he had submitted and that the statements had been issued by HSBC Bank. The Committee then presented the conflicting statements received from the bank in response to the subpoena and asked for an explanation, at which point respondent requested an adjournment of his deposition so that he might retain counsel.

The Committee granted the adjournment request on condition that respondent, who was about to leave the country, direct his counsel to contact the Committee within two weeks, to which respondent agreed. However, respondent did not retain counsel within the allotted time and subsequently left a telephone message for staff counsel, informing her that he would be out of the country longer than he had initially expected, stating that "I will contact you as soon as I get back into the country."

Respondent failed to contact staff counsel as promised. Between July and September 2013, the Committee sent respondent seven copies of essentially the same letter directing him or his counsel to contact the Committee within 10 days to schedule the continuation of his deposition. Otherwise it would have no choice but to file a motion seeking his immediate suspension based on, inter alia, his failure to cooperate with the Committee's investigation. The letters were sent by first-class mail and certified mail, return receipt requested, to respondent's registered business address and his home address. None of the first-class mailings were returned, while all but one of the certified mailings were returned as "unclaimed." The Committee received a signed, return receipt for a certified mailing sent to respondent's home address in September 2013, which was not signed by respondent but by someone sharing his last name. Respondent did not contact the Committee in response to these mailings.

Meanwhile, in May 2013, a complaint was received from another of respondent's clients, who informed the Committee that

he had not received a $15,000 balance that remained outstanding on a settlement obtained in October 2011. Despite three written requests to answer the complaint including notice that failure to answer could result in his suspension for failure to cooperate with the Committee's investigation, respondent failed to respond. Of three first-class mailings, only one sent to respondent's business address was returned, marked "not deliverable," and while two certified mailings were returned as "unclaimed," a return receipt was received for the mailing to respondent's business address bearing a largely illegible signature.

In June 2014, yet another of respondent's clients complained that a settlement obtained in October 2007 for $26,500 had not yet been disbursed to her. Similar attempts to elicit an answer to the complaint from respondent were unavailing.

The Committee now seeks an order immediately suspending respondent from the practice of law until further order of this Court due to professional misconduct that immediately threatens the public interest (Rules of App Div, 1st Dept [22 NYCRR] § 603.4 [e] [1] [i], [iii]). The record establishes that respondent has willfully failed to fully cooperate with the Committee's investigation by failing to appear for a continued deposition and to answer two complaints filed against him (22 NYCRR 603.4 [e] [1] [i]). Moreover, the record demonstrates that respondent submitted altered escrow account bank statements, representing them to be authentic at his deposition, and that he misappropriated client funds (22 NYCRR 603.4 [e] [1] [iii]; see e.g. Matter of Rosenberg, 117 AD3d 47 [1st Dept 2014] [interim suspension based on failure to appear for deposition and bank records evincing misappropriation of client funds]; Matter of Linder, 112 AD3d 152 [1st Dept 2013] [interim suspension based on failure to fully cooperate and bank records evincing misappropriation of client funds]; Matter of Jackson, 103 AD3d 10 [1st Dept 2013] [interim suspension based on submission of altered bank statements and bank records evincing misappropriation of client funds]), thereby threatening the public interest and warranting his immediate suspension.

Accordingly, the Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) should be granted and respondent suspended from the practice of law in the State of New York, effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.

GONZALEZ, P.J., TOM, FRIEDMAN, ACOSTA and MOSKOWITZ, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.